NOT DESIGNATED FOR PUBLICATION

No. 121,950

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of A.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Barton District Court; STEVEN E. JOHNSON, judge. Opinion filed May 15, 2020. Affirmed.

*Donald E. Anderson II*, of Law Office of Donald E. Anderson II, LLC, of Great Bend, for appellant natural mother.

*Rita A. Sunderland*, assistant county attorney, and *M. Levi Morris*, county attorney, for appellee.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: D.C. (Mother) appeals the district court's termination of her parental rights to her daughter A.C., born in 2008. Mother claims there was insufficient evidence to support the district court's findings she was an unfit parent and her unfitness was unlikely to change in the foreseeable future. While the case was pending for over 17 months, Mother never had one clean drug test to qualify for visitation time with A.C. and failed to complete most of the reintegration plan tasks. Clear and convincing evidence was produced by the State to support the termination of Mother's parental rights to A.C. We affirm.

1

FACTS

In 2017, the Kansas Department for Children and Families (DCF) initiated contact with Mother upon receiving three reports alleging Mother physically abused her eight-year-old daughter, A.C., and one report that A.C. was not properly attending school. After issuing an Order of Protective Custody, the district court later granted an Order of Temporary Custody placing A.C. in the custody of DCF on December 18, 2017. The State then petitioned for the district court to declare A.C. to be a child in need of care (CINC). Mother failed to appear at a February 2018 adjudication hearing, and the district court entered a default judgment adjudicating A.C. to be a CINC. The district court adopted DCF's permanency plan and ordered the child to remain in DCF custody. A.C.'s father could not be located, and in his absence a default judgment was also entered against him.

As part of the permanency plan approved by the district court, Mother was ordered to complete a drug and alcohol evaluation and to pass three consecutive drug tests before she could visit with A.C. But the district court granted St. Francis—a foster care provider contracted by DCF to help supervise cases—the discretion to allow visitation.

In the fall of 2018, the district court determined reintegration was no longer a viable option. The State moved to terminate Mother's and Father's parental rights on January 24, 2019. Father could not be found, and his parental rights were terminated in April 2019. At Mother's termination hearing on May 28, 2019, the State presented five witnesses, including Mother. Mother and her fiancé testified against termination. The district court took judicial notice of the file including reports of progress while the matter was pending.

Mother testified she had two other children, neither of whom lived with her. One had been adopted by the grandparents, and the other child lived with them. Mother admitted she needed to have three clean consecutive drug tests to have visitation time with A.C., but she failed to satisfy this requirement. She refused to submit to drug testing when workers showed up at her house, but the record reflects she did admit at one visit she would be positive for THC if tested. Just three weeks before her termination trial, she admitted to using methamphetamine and tested positive for methamphetamine and MDMA. Mother also admitted she received letters in the mail from St. Francis and had several people come to her home claiming to be her caseworker or family support worker, but she declined to meet with them.

Next, Tara Elliott, a family support worker for St. Francis, testified she was assigned to Mother's case for three or four months in 2018. She attempted to contact Mother every month by letter, phone call, and text message but generally had trouble contacting her or getting any response. Either she or another worker stopped by Mother's home weekly. Generally, they could not contact Mother, or she would refuse a drug test. Elliott testified she met with Mother only one time at her home. The house had clutter covering most surfaces, and there were no lights on in the home. According to Elliott, Mother said her electricity was off. Elliott had stopped by to see Mother and to obtain a drug swab, but Mother refused.

Lanie Trendel, a child protection specialist with DCF, testified about the abuse allegations and investigations prompting A.C.'s removal from the home. She testified about her contact with Mother and her unwillingness to cooperate, take drug tests, or utilize the resource services available in Barton County or in the surrounding counties. She also explained to Mother that her cooperation with letting workers into the house and taking drug tests would help, but she observed Mother's behavior did not change.

Sandy McMullen, a family support worker with St. Francis, testified she stopped by Mother's home to introduce herself and conduct a random drug test. Mother refused to meet with her, expressed frustration over McMullen presenting herself without first calling, and closed the door.

Cary Henry, a licensed social worker with St. Francis and the assigned case manager starting in July 2018, testified her role was to oversee cases and to work with the children. Henry went to Mother's home during the month after she was assigned to the case to introduce herself, but she could not make contact. She attempted additional contact with the Mother as the case progressed without success. According to Henry, at least five different family support workers made attempts to meet Mother at her home, but, to Henry's knowledge, no one was given permission by Mother to sit down with her to go over her case plan. Henry testified Mother failed to attend four scheduled drug and alcohol evaluations. Henry also testified the records showed Mother had not completed her drug and alcohol evaluation before the trial.

Henry's testimony added to the mix by showing Mother failed to complete many case plan tasks, including passing three consecutive drug tests, complying with random drug tests, permitting walk-throughs of her home, maintaining contact with St. Francis at least once a month, and completing a parenting class. According to Henry, Mother never qualified for visits with A.C.

*Mother's Defense*

Mother testified she was living with her fiancé who worked for an oil company. She entered as an exhibit her City of Russell utilities account for the home she resided in when Elliott visited her in September 2018, reflecting the utilities were on. She maintained her home was a suitable environment for A.C. during the case.

4

Mother further testified St. Francis never explained what she needed to do to get A.C. back. She claimed she did not know who her case manager was until she met Henry in May 2019, shortly before her termination trial. Mother further claimed St. Francis employees came by her home unannounced and without identification to ask for drug tests but not to review her case plan. She alleged she never received phone calls from St. Francis, and no one answered the phone when she called them.

Mother testified that in March 2018, she engaged in mental health services and drug and alcohol services without any assistance from St. Francis. She later quit because she did not have reliable transportation at the time. But she periodically spoke to or met in person with her drug and alcohol counselor and therapist. By the May 2019 case plan meeting, she had completed several case plan tasks, including obtaining a birth certificate for herself and A.C., obtaining a social security card and driver's license, and finding stable housing that was clean, livable, and up to code. She stated she told Henry she would provide proof at their next meeting in June.

Mother's fiancé also testified, stating he made enough money to provide for both himself and Mother.

*District Court's Decision*

The district court found clear and convincing evidence Mother physically abused A.C. based on A.C.'s disclosure to her teachers and case workers and various marks on the child, coupled with A.C.'s refusal to allow photos of her injuries to be taken because she was concerned she would get in trouble for making statements to the authorities about her mother. The district court also found Mother's drug use alone supported a finding of unfitness, based on the fact Mother had 33 opportunities to test with St. Francis and she either could not be contacted or refused testing. When Mother did submit to court-ordered drug tests three weeks before trial, she tested positive for both methamphetamine

and MDMA. The district court also found Mother failed to obtain the court-ordered drug and alcohol evaluation, even though Mother blamed the failure on St. Francis and DCF.

Next, the district court found the agencies' efforts were reasonable given Mother's uncooperative attitude, her failure to maintain contact with St. Francis, her refusal to submit to drug testing, and her refusal to allow workers into her home. The district court also found Mother failed to maintain a home suitable for a child. The district court went on to find Mother made "no substantial effort whatsoever" to reintegrate, failed to cooperate regarding the reintegration plan, and simply refused to follow any of the conditions set out in the plan—especially the drug treatment and having clean drug test results—so she could start visitation and reintegration. Based on her past behavior and lack of case progress, the district court found by clear and convincing evidence Mother's unfitness currently existed and was unlikely to change in the foreseeable future. The district court also determined termination of Mother's parental rights was in A.C.'s best interests.

Mother timely appeals. Father does not participate in this appeal.

ANALYSIS

The revised Kansas Code for Care of Children, K.S.A. 2019 Supp. 38-2201 et seq., governs termination of parental rights proceedings. A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control").

6

Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2019 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

The State must prove the parent unfit "by reason of conduct or condition" making him or her "unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2019 Supp. 38-2269(a). The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2019 Supp. 38-2269(b), (f).

In reviewing a district court's determination of unfitness, an appellate court must be convinced a rational fact-finder could have found that decision "highly probable," i.e., supported by clear and convincing evidence. *In re B.D.-Y.*, 286 Kan. at 705. The appellate court must view the evidentiary record in the light most favorable to the State. It cannot reweigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705.

Having found unfitness, the district court must then decide whether, by a preponderance of the evidence, termination of parental rights is in the child's best interests. K.S.A. 2019 Supp. 38-2269(g)(1); *In re R.S.*, 50 Kan. App. 2d at 1116. That decision is left to the district court's sound judicial discretion. An appellate court only steps in where the district court abuses its discretion by ruling in a way no reasonable person would agree or by basing its decision on a factual or legal error. 50 Kan. App. 2d at 1116.

*Statutory Factors Considered*

Here, the district court found five statutory factors established Mother's unfitness:

- K.S.A. 2019 Supp. 38-2269(b)(2)—"conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;"

- K.S.A. 2019 Supp. 38-2269(b)(3)—"the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;"

- K.S.A. 2019 Supp. 38-2269(b)(7)—"failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;"

- K.S.A. 2019 Supp. 38-2269(b)(8)—"lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child;" and

- K.S.A. 2019 Supp. 38-2269(b)(9)—"whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home."

The district court also applied the presumption of unfitness under K.S.A. 2019 Supp. 38-2271(a)(5), which provides unfitness is presumed if the State establishes, by clear and convincing evidence, the child has been in court-ordered out-of-home

8

placement for a "cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home." On appeal, Mother now challenges the district court's findings for each factor, including the presumption of unfitness, to terminate her parental rights.

*Abusive Conduct*

The district court applied K.S.A. 2019 Supp. 38-2269(b)(2). DCF received three reports alleging Mother physically abused A.C. At trial, Trendel testified DCF received a report of physical abuse in August 2017, alleging Mother hit A.C. with a wooden board in the front yard of their home, causing A.C. to yell for help. This report was unsubstantiated by DCF. Though witnesses reported seeing this event occur, both A.C. and Mother denied it ever happened, and there was no visible injury.

In October 2017, A.C. reported another incident of physical abuse. Mother became angry when A.C. did not let the dog out and it had an accident in the house. Mother threw A.C. against the wall, and A.C. fell and hit her face on a baby gate. Trendel testified a worker visited A.C. in the morning at school and saw her holding an ice pack to the left side of her swollen and red face. A.C. expressed fear that her Mother would find out she reported her. She told DCF she felt safe to go home and did not want to go to foster care because Mother told her child molesters kidnap kids and put them in foster care. DCF workers asked A.C. if they could take a picture of the injury, but A.C. refused to remove the ice pack from her face. When law enforcement officers arrived in the afternoon, there was no visible injury. DCF employees and law enforcement officers went to the home later that day. Mother instructed A.C. to tell them what happened to her face, and A.C. said she faceplanted. Mother denied hitting A.C. and stated A.C. lies to get herself out of trouble. Trendel testified this report was unsubstantiated by DCF.

9

In December 2017, DCF received a third report alleging past physical abuse by Mother. The reporter saw A.C. with a handprint mark on her face, suggesting Mother had hit her. A.C. reported fearing her mother. But both Mother and A.C. denied any physical abuse. Trendel testified this report was unsubstantiated by DCF because it concerned past physical abuse and there was no visible injury by the time DCF could investigate.

Mother contends that because these allegations of physical abuse were unsubstantiated by DCF under a preponderance of the evidence standard, the district court clearly erred by finding clear and convincing evidence the abuse occurred. Mother's argument is unpersuasive. "Clear and convincing evidence [is] that which is sufficient to establish that the truth of the facts asserted is 'highly probable.'" *In re B.D.-Y.*, 286 Kan. at 696. Here, the State presented the facts surrounding each of the alleged abusive situations, and the district court also considered the circumstantial nature of the evidence and the way the child reacted to each event.

During DCF's investigation, multiple individuals claimed to have seen or heard Mother striking A.C. with a wooden board. Another individual claimed to have witnessed a handprint mark on A.C.'s face. One report came from A.C. herself, and a DCF worker observed A.C.'s face was red and swollen after this incident. A.C. made several statements indicating she feared being taken to foster care and feared her Mother getting arrested.

A decision may be supported by circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. See *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016); *Friedman v. Kansas State Board of Healing Arts*, 296 Kan. 636, 668-69, 294 P.3d 287 (2013). Viewing the evidence in the light most favorable to the State, a reasonable fact-finder could find it "highly probable" Mother physically abused A.C.

*Drug and Alcohol Use*

The district court found K.S.A. 2019 Supp. 38-2269(b)(3) applied regarding the use of dangerous drugs "of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." Mother argues the State failed to show her drug use impeded her ability to parent. But the State does not have to provide *direct evidence* a parent's conduct is due to drug use if sufficient evidence shows that drug use impeded reintegration. See *In re J.L.*, No. 117,529, 2018 WL 1247167, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1594 (2018).

There is sufficient evidence to show drug use impeded Mother's reintegration with A.C. Mother was under court order to pass three consecutive drug tests before she could visit with A.C. During the 17 months as the case progressed, Mother never had a clean drug test and St. Francis employees unsuccessfully attempted to drug test Mother 33 times. Of those attempts, Mother agreed to meet with the workers only eight times and refused drug testing all eight times. Mother consented to testing in January 2018 and tested positive for methamphetamine and amphetamines. She also tested positive for methamphetamine and MDMA in May 2019, three weeks before her termination hearing. Because she never completed three clean consecutive drug tests, Mother never qualified for supervised visits with A.C. during the case. Without visitation during the 17 months A.C. was out of her home, Mother could not complete several case plan tasks aimed at observing her behavior during visits to reintegrate A.C. into her home. Mother testified she met with her drug and alcohol counselor sporadically and dropped out of care at one point for lack of transportation. Henry, one of her supervising case managers during the 17 months A.C. was out of the home, testified Mother's drug and alcohol counselor reported Mother had not yet completed her drug and alcohol evaluation.

11

The evidence, when viewed in the light most favorable to the State, supports the district court's findings. A reasonable fact-finder could find it highly probable Mother—who had consistently refused testing, had not substantially participated in drug and alcohol counseling, and had tested positive for methamphetamine and MDMA three weeks before the termination hearing—was unfit to parent A.C. based on her continued drug use.

*Failure of Reasonable Efforts*

The district court found K.S.A. 2019 Supp. 38-2269(b)(7) applied because of the failure of reasonable efforts expended by both DCF and St. Francis to provide Mother with the opportunity to reintegrate with A.C. When reviewing this factor, we look at the efforts made by the agencies involved to help rehabilitate the family. Mother contends DCF and St. Francis failed to use reasonable efforts to rehabilitate the family because they did not attempt to help her complete other case plan tasks and solely focused on obtaining drug tests.

The agencies involved are obligated to use reasonable efforts to reintegrate a child with his or her parents. The agencies' goal is to support the parent activities to accomplish case objectives designed to correct the parent's conduct or condition that caused removal of the child from the home. *In re A.T.*, No. 120,211, 2019 WL 2063949, at *4 (Kan. App. 2019) (unpublished opinion). But these efforts do not have to guarantee results; they just must be reasonable. The agencies are there to provide structure for parents to learn and succeed, "'but to do so the parent must exert some effort.'" *In re M.S.*, 56 Kan. App. 2d 1247, 1257, 447 P.3d 994 (2019).

There is sufficient evidence to support the district court's finding the agencies used reasonable efforts to rehabilitate Mother during the 17 months A.C. was out of the home. DCF offered services to Mother when it first investigated allegations of physical abuse

and discovered a lack of utilities in the home. Trendel testified she offered Mother safety plans and family preservation services in each meeting. She also offered Mother a list of Barton County resources, suggested vocational rehabilitation, and recommended Mother consider the Dream Center and transitional housing in Hutchison or Salina. Mother declined these resources.

Family support workers made considerable efforts to drug test Mother, but she refused the requests. Mother showed frustration with the testing requests, but testing was part of the reintegration plan to allow visitation with A.C. in support of the ultimate goal to return A.C. to the home. Mother had no visits with her daughter during the 17 months A.C. was out of the home because she never provided three clean drug tests to DCF. Without visitation, Mother could not complete several case plan tasks requiring supervised visitation. St. Francis also referred Mother twice for drug and alcohol evaluations. Further, the record reflects Mother was less than cooperative. Henry and Elliott both testified Mother was difficult to reach by phone and in person, and if they did catch her at home, Mother would conclude the meeting abruptly without letting them in her house. Based on these facts—repeated efforts to contact, drug test, and provide services to Mother—a reasonable fact-finder could find it highly probable DCF and St. Francis used reasonable efforts to rehabilitate the family.

*Lack of Effort to Adjust Circumstances*

The district court found K.S.A. 2019 Supp. 38-2269(b)(8) applied because Mother showed throughout the entire time of the reintegration plan that she lacked effort to adjust her circumstances and conduct to meet the child's needs. Mother responds she made reasonable efforts to adjust her circumstances to meet A.C.'s needs. She testified she and her fiancé moved into a clean home with working utilities, had generally been engaged in drug and alcohol care, and completed several other case plan tasks.

Although the utility bill admitted at trial appears to contradict the district court's finding that Mother did not have electricity at her home when Elliott visited, it does not affect the other findings the district court made to support termination. The record reflects Mother did complete a few case plan tasks, including obtaining a government phone, living in a home that complied with city ordinances, and providing her contact information to St. Francis. Mother claimed she had completed several other case plan tasks, but Henry testified St. Francis could not verify Mother completed those tasks because she refused to allow walk-throughs of her home, refused to sign a release for St Francis to obtain the information, and was generally uncooperative.

Notwithstanding the few case plan tasks Mother did complete, a reasonable fact-finder could find it was highly probable Mother failed over the 17 months A.C. was out of her home to adjust the circumstances of her life to meet A.C.'s needs. Mother never qualified for visitation time with A.C., failed to maintain contact with St. Francis, refused almost all drug testing when contacted by St. Francis, and tested positive for methamphetamine and MDMA three weeks before the hearing.

*Extended Out-of-Home Placement*

The district court next found the presumption in K.S.A. 2019 Supp. 38-2269(b)(9) applied—"whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home." The district court found A.C. was placed out of the home because Mother failed to battle her drug addiction and obtain three clean drug tests to establish visitation with her child and failed to carry out the court-approved reintegration plan to place A.C. back in Mother's home.

14

Given all the other factors the district court detailed and the close proximity in time A.C. was out of her Mother's home to the qualifying 15-month period of time outlined in K.S.A. 2019 Supp. 38-2269(b)(9), we decline to address this factor. There was other substantial competent evidence as described herein to support the district court's finding Mother's parental rights should be terminated.

*Presumption of Unfitness*

The district court also applied the presumption in K.S.A. 2019 Supp. 38-2271(a)(5), which presumes unfitness if the State establishes by clear and convincing evidence the child has been in out-of-home placement for one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable reintegration plan. The parent bears the burden of proof to rebut the presumption of unfitness by a preponderance of the evidence. K.S.A. 2019 Supp. 38-2271(b). If the parent fails to rebut this presumption or otherwise produce evidence the parent is fit or will be fit in the foreseeable future, the district court shall terminate parental rights. K.S.A. 2019 Supp. 38-2271(b).

Once again given the extent of the other substantial competent evidence presented to support termination of Mother's parental rights, we decline to address the merits of this presumption as it applies to the facts of this case.

*Unfitness Unlikely to Change in Foreseeable Future*

Substantial competent evidence in the record supports the district court's finding Mother's unfitness was unlikely to change in the foreseeable future. Courts examine the "foreseeable future . . . from the perspective of a child because children and adults have different perceptions of time and children have the right to permanency within a time

frame reasonable to them." *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014); see K.S.A. 2019 Supp. 38-2201(b)(4).

Throughout the reintegration plan, Mother was uncooperative, completed few case plan tasks, and continued to use drugs. In 17 months, Mother never had a clean drug test, tested positive for methamphetamine and MDMA three weeks before her termination hearing, and admitted during one of her visits with a social worker that, if tested, she would test positive for THC. At the time of the termination hearing, A.C. was 10 years old and had been out of the home since she was 8 years old. Given Mother's lack of performance over the length of the reintegration plan coupled with her failure to qualify for visits with A.C. over the 17 months she was out of her Mother's home, there was substantial competent evidence to support the district court's finding it was "highly probable" Mother was not going to change her behavior and her unfitness was not likely to change in the foreseeable future.

*Best Interests of the Child*

Finally, the district court determined termination of Mother's parental rights would be in A.C.'s best interests. "[T]he district court is in the best position to make findings on the best interests of the child," and we will not disturb its judgment unless we find the determination amounts to an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 20, 2010.

The district court was tasked with evaluating all the testimony and evidence before determining it was in A.C.'s best interests to terminate Mother's parental rights. Given Mother's past conduct and continued drug use, her failure to obtain three clean drug tests during the 17 months A.C. was out of the home to be granted visitation time, and her inability to cooperate with the agencies there to provide services, a reasonable person could have concluded termination was in A.C.'s best interests.

16

The district court did not err in terminating Mother's parental rights.

Affirmed.